This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**O'BRIEN & ASSOCIATES, INC.,**

Plaintiff/Appellee,

v.                                                          NO.   30,724

**BEHLES LAW FIRM, P.C., a New Mexico Professional Corporation, RON MILLER, CPA, a New Mexico Professional Corporation,**

Defendants/Appellants.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Edmund H. Kase III, District Judge**

Atkinson, Thal & Baker, P.C.
Douglas A. Baker
Justin D. Rodriguez
Albuquerque, NM

for Appellee

Behles Law Firm, P.C.
Jennie Deden Behles
Eric N. Ortiz
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

The district court ruled that Appellants Behles Law Firm and Ron Miller, CPA, did not have an enforceable interest in Appellee O'Brien & Associates' property. We affirm.

**A.  Procedural and Factual Background**

This case began life as an effort by O'Brien to cancel liens on a certain parcel of real property so that it could be sold.[1]  The complaint alleged that Appellants claimed their interest in the property "by way of a security agreement."  Appellants answered asserting that they also claimed an interest in the property pursuant to "a transcript of judgment against [Ron] Green and Riverside Properties which was properly perfected as against the real estate."

The prior judgment Appellants relied on was entered in a collection action filed in 2004 against Ron Green and an entity called Riverside Properties Corporation. Appellants in that case sought to collect sums owed them for professional services

---

[1]Early in the litigation, the parties entered into a stipulated motion allowing sale of the real estate free and clear of liens.  The proceeds of the sale were to be placed into the court registry pending final determination of the validity, priority, and extent of the parties' claims.  After the sale, the parties undertook to litigate the validity and intent of their claims that, per the stipulated order, attached to the proceeds of the sale.

rendered. The suit also sought to foreclose on a series of security interests granted to them as security for the fees owed. One of the security agreements covered "and [sic] undivided one-half (½) interest in all of Riverside Properties Corporation's interest in assignment of the Molly Doolittle contract on real property and water rights." The suit was filed and the judgment was entered as a matter of agreement between Appellants and Ron Green. The judgment resulted in the entry and recording of the transcript of judgment referred to in Appellants' answer in this case.

The real estate was initially purchased by O'Brien from Molly Doolittle in 1999. Though the record is not entirely clear, it appears that in early 2002 O'Brien entered into an arrangement with Ron Green to help with development of the property. By August 22, 2002, the arrangement changed, resulting in execution of a Realtors Association of New Mexico Real Estate Contract for sale of an undescribed piece of realty by O'Brien to an entity called Del Rio Corporation. The buyer's signature was provided by "Ron Green - Manager." The August 22, 2002, contract was not intended to be a final contract and was not recorded. Ron Green was supposed to, but did not, prepare final documents and set up an escrow on behalf of Del Rio Corporation. The district court found that Del Rio Corporation did not fulfill the terms of the August 22, 2002, contract and was in default as of 2003.

Ostensibly—though again the record is less than clear—Riverside Properties was an entity created by Ron Green to fulfill the buyer's obligation under the August 22, 2002, contract. The district court found that there was no written assignment of the August 22, 2002, contract by Del Rio Corporation to Riverside Properties or any other entity. Riverside Properties' certificate of incorporation was revoked by the State of New Mexico effective March 31, 2003, and was never reinstated.

The district court entered a number of findings of fact concerning the formation of Riverside Properties and the actions it took after formation. The gist of the findings is that Ron Green forged Shelby Phillips' name on the creation documents as well as the security agreements relied on by Appellants in their collection action. The district court found that Ron Green had no authority to sign Shelby Phillips' name to any of the documents bearing his name. The district court also found that at some point Appellants became aware that Ron Green had falsely signed and forged Shelby Phillips' name to all the documents and that Appellants continued to use and rely on the documents knowing that they were forged. Finally, the district court found that Riverside Properties never owed Appellants any money.

The district court found that "Ron Green, individually, was never intended to be an owner of the property or to be bound by the August 22, 2002[,] contract." The district court also found that Ron Green never owned any interest in the Molly

4

Doolittle contract or the property. The district court also found that "Behles and Miller stipulated to this Court that Ron Green did not have any interest in the property and/or that any such interest in the property had been abandoned prior to or as a result of the bankruptcy."

**B.       Appellants' Evidentiary Issues Cannot be Addressed**

The Appellants' brief in chief presents a convoluted melange of evidence-based issues and legal issues. Appellants indiscriminately interweave challenges to the district court's findings of fact with assertions that the district court should have found other facts alongside arguments concerning evidentiary rulings. The mix would be difficult to follow even if the parties had practiced good briefing techniques in compliance with the Rules of Appellate Procedure. Unfortunately for this Court, Appellants have wholly failed to comply with the rules. Appellants' briefing renders it virtually impossible to review their assertions because they fail to properly cite to the record and fail to present the pertinent evidence as a whole. *See Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, 2010-NMCA-021, ¶ 15, 147 N.M. 720, 228 P.3d 504, *aff'd*, 2011-NMSC-039, 150 N.M. 650, 265 P.3d 701. As we reminded the bar in *Wachocki*, the only way to properly support a challenge to the sufficiency of the evidence is to provide appropriate "citations to authorities, record proper, transcript of proceedings or exhibits relief on." Rule 12-213(A)(4) NMRA. Where a party fails

to appropriately cite to the record, the Court need not consider unsupported arguments. *Wachocki*, 2010-NMCA-021, ¶ 15.

In this case, this Court is doubly hampered in its efforts to review and resolve the issues. First, Appellants have not provided us a transcript of the trial proceedings. Lack of a transcript creates obvious problems for the Court and for the parties in deciphering what evidence the district court heard and relied on in its rulings. It also makes it impossible for Appellants to include as they must "the substance of all the evidence bearing upon a proposition" if they wish to challenge the district court's findings of fact. *Martinez v. Sw. Landfills, Inc.*, 115 N.M. 181, 186, 848 P.2d 1108, 1113 (Ct. App. 1993). We did receive recordings of the trial but Appellants wholly failed to provide citations to the recordings. Second, Appellants did not provide us any of the exhibits admitted at trial. This created obvious difficulties for this Court in deciding the case. Even after the Court alerted the Appellants to the problem, they did nothing to remedy the problem. Finally, out of an abundance of caution, the Court took it upon itself to have the exhibits transported.[2]

Appellants' briefs—obviously—include no citations to the trial testimony and other trial proceedings. Appellants do cite to large sections of the record proper at

[2]We hereby deny Appellants' Motion to Set Aside Order and/or Response to Order Concerning Exhibits" filed in response to our "Order Concerning Trial Exhibits."

6

times, but the references are to court monitor logs and are not helpful or relevant. At other points, Appellants attempt to cite to trial testimony contained in the record proper, but the citations are of no use because there is no reference to a record proper page. We will not search a 5000-plus page record proper to do what is Appellants' job.

As a result of Appellants' failure in connection with their briefing, all of their evidentiary-based arguments are deemed waived. We will not entertain any of them substantively. *Wachocki*, 2010-NMCA-021, ¶ 17. As a result, the district court's findings of fact will stand unchallenged. In addition, we will not consider any arguments that the district court improperly excluded evidence or failed to make or adopt other findings of fact.

**C.     General Challenges**

Appellants make three preliminary legal arguments concerning the district court's findings of fact which we will deal with before moving on to the substantive issues in the case. Appellants contend that the district court committed reversible error by: (1) adopting O'Brien's requested findings and conclusions "wholesale" and with no evidence of independent consideration; (2) adopting "antagonistic" findings, and (3) reversing a judgment entered earlier in the case by a "separate court." We are not persuaded.

7

First, the record available to us on its face indicates that the district court exercised independent judgment in arriving at its decision. The district court adopted the majority of O'Brien's proposed findings of fact, but not all of them. The rejected proposed findings reflected a theory of the case against Appellants (that Appellants themselves were guilty of fraud because they continued to rely on forged documents after they became aware of the forgery) that the district court rejected. Other rejected findings reflect an alternative theory of O'Brien's requesting payment in full of amounts due on the real estate contract if the district court found that the contract had somehow survived. The district court also rejected a number of O'Brien's requested findings concerning Carl Kelly Construction, a party not involved in this appeal.

Thus, the district court acted in accordance with our caution that district courts "should generally avoid verbatim adoption" of findings and conclusions submitted by parties. *Pollock v. Ramirez*, 117 N.M. 187, 192, 870 P.2d 149, 154 (Ct. App. 1994). More importantly, there is no indication that the district court's findings are not supported by substantial evidence. As such, even if the district court had adopted O'Brien's findings verbatim, there would be no reversible error. *Id.*

Second, the district court's findings are not "antagonistic" or conflicting. We perceive the findings as a stepped response to Appellants' theories of recovery. In this sense, they are analogous to pleading causes of action in the alternative. Thus, for

example, it is not inconsistent for the district court to find that a real estate contract failed to pass any title because of defects in its form but, in the alternative, also find that—if the contract could be held to be effective—that it was later properly terminated. Further, even if we were to find that certain of the district court's findings were erroneous, reversal would not be required. In keeping with our general presumption of correctness, if erroneous findings are not necessary to "support the judgment . . . and other valid material findings uphold the trial court's decision, the trial court's decision will not be overturned." *Normand ex rel. Normand v. Ray*, 109 N.M. 403, 411, 785 P.2d 743, 751 (1990). In any event, as we shall see, Appellants' own approach and theory on appeal obviate most, if not all, of the concerns they raise.

Appellants' third general assault on the district court's findings is difficult to parse. At one point, Appellants seem to argue that the district court could not reverse a summary judgment entered earlier in the same case but by a predecessor judge. If this is Appellants' argument, they are wrong. The general rule is that a grant or denial of summary judgment is an interlocutory order subject to reconsideration "notwithstanding the fact that a different judge had issued that ruling." *Tabet Lumber Co. v. Romero*, 117 N.M. 429, 431, 872 P.2d 847, 849 (1994).

At another point, Appellants seem to argue that the district court's findings somehow work to undermine or reverse the judgment previously entered against Ron

Green and Riverside Properties. The judgment in the other case—or, more particularly the transcript of judgment issued in the case—form a large part of Appellants' basis for their claims in this case. Without citation to the record, Appellants assert that the district court "in its wholesale adoption of [O'Brien's] findings and conclusions ruled the judgment was void." Without citation to the record, it is difficult to decipher the argument, and we are tempted to simply refuse to deal with it for the same reason. Instead, we reject the argument as irrelevant to our resolution of the case.

Appellants' theory of the case—as best we can decipher it—was that the judgment entered in their collection action against Ron Green and Riverside Properties created an enforceable lien on the vendee's interest Green and Riverside held under the August 22, 2002, real estate contract. Appellants' theory was that their lien attached to the vendee's interests before the real estate contract was properly terminated and that they could not be deprived of their lien by any termination of the real estate contract which might occur during, or as a result of, this litigation. They also argued below that the attempted termination of the August 22, 2002, real estate contract was ineffective because the notice and demand was served on Del Rio Corporation rather than Riverside Properties. Appellants asserted below that Riverside Properties was the successor to Del Rio Corporation's interest as purchaser

under the August 22, 2002, real estate contract. The trial court rejected Appellants' theory of the case and their factual assertions.

On appeal, Appellants narrow their arguments substantially. Appellants inform us that "[f]or purposes of this appeal, Miller et al., focuses on its personal judgment lien held against Ron Green personally, which attached to the subject property when it was recorded in Sierra County, attaching through the purchaser of [the] real estate contract." At page nine of the brief in chief, Appellants state: "Miller et al[.] . . . abandon[] their interest in the security agreement between Miller et al[.] and Riverside [Properties]. However, it still claims and [sic] interest in Ron Green personally through its recorded transcript originated in *Miller v. Green*." And at page twelve of the brief in chief, Appellants state: "Yet, Miller et al. will for purposes for [sic] this appeal, only claim an interest in land through Ron Green." We take Appellants' statements as to the theory of their appellate argument at face value and focus on Green's interest in the property.

As a result of Appellants' focus, the argument that the district court's ruling invalidated the prior judgment becomes irrelevant. All of the findings which can be read to question the prior judgment involve either: (1) the district court's finding that the documents creating Riverside Properties and granting the security agreements foreclosed in the prior case were forgeries; or (2) the fact that Riverside Properties'

11

certificate of incorporation was revoked before any of the security agreements and other documents in favor of Appellants were signed. None of these concerns directly affect Ron Green's personal interests in the property or his liabilities to Appellants. We now turn to Appellants' arguments concerning Green's interest.

**D.    Green's Interest**

Appellants make three interrelated arguments with regard to Green's interest in the August 22, 2002, real estate contract. First, they argue that he was liable on the contract because he signed the real estate contract "as a promoter of a corporation to be formed." Second, they note that the district court did not enter a finding that Green was in default of the contract or that Green's interest in the contract was ever effectively terminated. Third, they argue that any termination of Green's interest in the real estate contract came too late to affect the validity of their lien and was ineffective as to them at any rate because they were not included in the notice of termination. Given our resolution of the issue, we need only address the first contention.

We reject Appellants' argument that Green was a party to the real estate contract on both legal and factual grounds. Though it may be accurate in the abstract to say that a promoter who contracts on behalf of a corporation contemplated, but not yet organized, is personally bound, that abstraction must be tested against the factual

12

circumstances in each case. Here, the corporation was formed, albeit under a different name than is reflected in the real estate contract. Thus, there was no unidentified principal that Green was acting for. More importantly, the district court found that there was never an intent by the contracting parties that Green have a personal interest in the real estate contract. O'Brien and Green both testified to that effect. Here, O'Brien has never attempted to hold Green personally responsible for the real estate contract. To the contrary, as the district court found, O'Brien did not want Green to have a personal interest and worked to ensure he had no interest in the transaction. To hold that Green had a personal interest contrary to this finding would be to impose a contractual relationship on O'Brien and Green that neither contemplated or intended. Courts should not rewrite contracts or impose a contractual relationship contrary to the parties' intent. To do so at the request of a stranger to the potential contractual relationship is untenable.

All of these findings provide support for the district court's ultimate decision that Green individually never owned any interest in the Molly Doolittle contract or the real estate contract. If Green had no individual interest in any of O'Brien's property or the real estate contract, Appellants' transcript of judgment could not attach to or create a lien on anything related to them.

The case Appellants rely on is not on point. In the case Appellants cite, the person in O'Brien's position was attempting to impose contractual responsibilities on an undisclosed principal, an entity in Riverside's position here. *Morris Oil Co. v. Rainbow Oilfield Trucking, Inc.*, 106 N.M. 237, 240-41, 741 P.2d 840, 844-45 (Ct. App. 1987). As noted, Appellants have waived any claim based on any interest Riverside may have claimed.

As a closing note, we reiterate that district court's findings that "Behles and Miller stipulated to [the c]ourt that Ron Green did not have any interest in the property and/or that any such interest in the property had been abandoned prior to or as a result of the bankruptcy." On its face, this finding seems dispositive of Appellants' argument on appeal.

Appellants do not mention this finding in their briefing. In our view, their failure to do so is sanctionable given their approach to the appeal.

O'Brien also inexplicably failed to rely on this finding in its briefing. This failure unduly complicated this Court's work on the case and undoubtedly imposed undue expense on O'Brien for its representation in this appeal.

**CONCLUSION**

For the reasons stated, we affirm the district court.

14

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**LINDA M. VANZI, Judge**