2003-NMCA-125

79 P.3d 836

Franklin **FITZJERRELL,** as Personal Representative of the Estate of Paul Adam Fitzjerrell; Tanya Fitzjerrell, Wife; Tanya Fitzjerrell, as Guardian Ad Litem acting on behalf of John–Paul Fitzjerrell, Son, Plaintiffs,

and

Franklin Fitzjerrell, Father; Verlia Fitzjerrell, Mother; Gail Fitzjerrell, Sister; Judy Tixier, Sister; Sandy Fitzjerrell, Sister; Grace Lueras, Sister; and Valerie Galaviz, Sister, Plaintiffs–Appellants,

v.

CITY OF GALLUP ex rel. GALLUP POLICE DEPARTMENT, an Agency of the City of Gallup; Michael Brandau; Kenneth C. Brandau; Sigarms, Inc., a corporation; SIG, a corporation; and Unknown Persons 1 through 100, Defendants–Appellees.

No. 22,119.

Court of Appeals of New Mexico.

Aug. 28, 2003.

William G. Stripp, Ramah, NM, for Appellants.

James P. Lyle, Law Offices of James P. Lyle, P.C., Albuquerque, NM, for Appellees.

## OPINION

KENNEDY, Judge.

{1} In this case we are called on to determine whether the parents and siblings of a deceased adult, with whom they did not live, can maintain a common law cause of action for loss of consortium. Plaintiffs represent two classes of relatives who have not yet been permitted to maintain such a suit as a matter of law. The district court accordingly dismissed their complaint for failing to state a cause of action as a matter of law.

{2} For the past decade or so, our courts have struggled with the question of who *can* maintain such a cause of action. Our courts have gone to great lengths to balance a legal duty to foreseeable injured parties with public policy restricting access to this cause of action from persons with relationships outside a certain degree or quality of closeness. Recently, in *Lozoya v. Sanchez*, 2003–NMSC–009, ¶ 21, 133 N.M. 579, 66 P.3d 948, our Supreme Court clearly stated that the determination of who can recover for loss of consortium should be based on facts establishing the quality of a relationship, not on a legal definition establishing or rejecting one. "It is appropriate that the finder of fact be allowed to determine, with proper guidance from the court, whether a plaintiff had a sufficient enough relational interest with the victim of a tort to recover for loss of consortium." *Id.*

{3} Because this process is properly rooted in a factual determination and the district court's decision did not consider factors beyond the "current state of the law," at the time it dismissed the loss of consortium claims, we reverse the district court's granting of the City of Gallup's motion to dismiss and remand for proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

{4} In November 1997, Paul Adam Fitzjerrell (Decedent) died as a result of a bullet wound to his head. The weapon that discharged the bullet was a pistol, a service weapon that had been in the possession of Gallup Police Officer Michael Brandau. At the time of his death, Decedent was twenty-five years old and was survived by his wife, Tanya Fitzjerrell and his minor son, John–Paul Fitzjerrell. Decedent was also survived by his parents, Franklin and Verlia Fitzjerrell and five sisters, Gail Fitzjerrell, Judy Tixier, Sandy Fitzjerrell, Grace Lueras, and Valerie Galaviz. For purposes of this appeal, "Plaintiffs" shall refer only to Decedent's sisters and parents.

{5} In November 1999, Plaintiffs sued several defendants including the City of Gallup, Officer Michael Brandau, and firearm manufacturers (Defendants) for wrongful death

and loss of consortium. The City of Gallup filed an answer and subsequently a motion to dismiss requesting dismissal of Plaintiffs' loss of consortium claims against it because "[c]urrent New Mexico law does not permit plaintiffs' loss of consortium claims." Plaintiffs filed a response opposing the motion to dismiss and moved to amend the complaint (but not their loss of consortium count) on November 29, 1999. In January 2001, the district court held a hearing on the City of Gallup's motion to dismiss and Plaintiffs' motion to amend the complaint.

{6} Prior to the hearing, the parties resolved their positions on the motions. The hearing itself lasted just shy of seven minutes, and consisted primarily of the City of Gallup's counsel informing the district court of the nature of the parties' agreement and "stipulation" to various results. The scope of the district court's consideration was entirely defined by the parties' stipulation, with the apparent purpose of defining the issues for an anticipated appeal. There is no written memorandum concerning this stipulation. The portion of the stipulation that is most germane to our consideration is that the parties agreed that the district court would grant Defendants' motion and dismiss the complaint. Based on the dismissal of the complaint, the record would be preserved, as would Plaintiffs' right to appeal the issue of whether loss of consortium was a cause of action available to them under New Mexico law. Plaintiffs' motion to allow the refiling of a complaint without prejudice to Plaintiffs' rights under the statute of limitations was also granted. However, under the stipulation, Plaintiffs would be precluded from filing any claim "that would ask that the court expand existing law regarding loss of consortium in New Mexico." The district court granted both motions.

■ {7} In its order, the district court held that Plaintiffs could not, as a matter of law, re-sue for loss of consortium. The district court ordered that "[t]he Amended Complaint will not contain any claims seeking to expand existing law on loss of consortium, nor will it attempt to assert claims for attorneys' fees or punitive damages against defendant City of Gallup." The order also stated that "[a]fter filing the Amended Complaint, and before the defendant City of Gallup is required to answer, the plaintiffs will remove the Complaint to [the] United States District Court for the District of New Mexico." Plaintiffs appealed.

## STANDARD OF REVIEW

■ {8} The district court dismissed this case solely as a matter of law, holding that "existing New Mexico Law" did not allow Plaintiffs to sue for loss of consortium and did not take any facts into consideration. We hold that the dismissal is equivalent to a dismissal under Rule 1–012(B)(6) NMRA 2003. Whether or not the district court has properly granted a motion to dismiss under Rule 1–012(B)(6) is a question of law, which we review de novo. *Moffat v. Branch,* 2002–NMCA–067, ¶ 31, 132 N.M. 412, 49 P.3d 673. We are under no obligation to accept the district court's interpretation of the law. *See Wilson v. Denver,* 1998–NMSC–016, ¶ 13, 125 N.M. 308, 961 P.2d 153. Upon review, we accept as true all facts properly pleaded. *Delgado v. Phelps Dodge Chino, Inc.,* 2001–NMSC–034, ¶ 2, 131 N.M. 272, 34 P.3d 1148. Dismissal of a claim under this rule is only proper if Plaintiffs are not legally entitled to relief under any set of provable facts. *Wallis v. Smith,* 2001–NMCA–017, ¶ 6, 130 N.M. 214, 22 P.3d 682.

## DISCUSSION

### Loss of Consortium

{9} In 1985 our Supreme Court held "that New Mexico would not recognize a spouse's claim for negligent injury to the other spouse." *Tondre v. Thurmond–Hollis–Thurmond, Inc.,* 103 N.M. 292, 293, 706 P.2d 156, 157 (1985), *overruled by Romero v. Byers,* 117 N.M. 422, 872 P.2d 840 (1994). This bar to recovery dissolved in 1994 when *Romero* recognized the existence of a wife's cause of action for negligent loss of consortium because of the death of her husband, holding that "[l]oss of consortium is simply the emotional distress suffered by one spouse who loses the normal company of his or her mate when the mate is physically injured due to the tortious conduct of another." *Id.* at 425, 872 P.2d at 843. The Court found that the

loss to the claimant is due only to the primary injury to that other person, and that the duty of a potential tortfeasor to a surviving spouse arises from the foreseeability of damage to the close relationship typically shared by husband and wife. *Id.* The injury is foreseeable because there should be nothing surprising about a spousal relationship involving companionship, support, society, comfort, aid, and protection. *See id.* at 426, 872 P.2d at 844.

{10} In 1998 the Supreme Court extended the cause of action, holding that a grandparent may bring a loss of consortium claim under certain circumstances. *Fernandez v. Walgreen Hastings Co.*, 1998–NMSC–039, ¶¶ 23–32, 126 N.M. 263, 968 P.2d 774. In that case, the Court determined that "it can be foreseeable that negligently causing the death of a twenty-two month old child will cause emotional distress to a grandparent who had a close familial relationship with the child." *Id.* ¶ 31. The Court held that foreseeability in consortium cases can exist where:

> (1) the victim was a minor; (2) the plaintiff was a familial care-taker, such as a parent or grandparent, who lived with and cared for the child for a significant period of time prior to the injury or death; (3) the child was seriously physically injured or killed; and (4) the plaintiff suffered emotional injury as a result of the loss of the child's companionship, society, comfort, aid, and protection.

*Id.*

{11} Most recently, the Supreme Court has addressed the cause of action and expanded the availability of a claim for loss of consortium to unmarried cohabitating partners who shared "an intimate ... relationship." *Lozoya*, 2003–NMSC–009, ¶ 29, 133 N.M. 579, 66 P.3d 948. Using the factors and analysis set forth by *Fernandez*, 1998–NMSC–039, ¶ 31, 126 N.M. 263, 968 P.2d 774, our Supreme Court, stressed that loss of consortium is a claim to recover compensation for damage to a *relational* interest with a person, not a legal interest. *See Lozoya*, 2003–NMSC–009, ¶ 20, 133 N.M. 579, 66 P.3d 948. In *Lozoya*, the consortium claimant and the injured person had "been together" for over 30 years, had three children, had lived for fifteen years in a house they purchased, used the same last name, and filed joint tax returns. *Id.* ¶ 9. *Lozoya* is clear: this cause of action is now firmly established in our common law, and "[i]f it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed *to that plaintiff* by the defendant." *Id.* ¶ 15 (internal quotation marks and citation omitted). In addition to foreseeability, "[o]ur duty rule also asks whether any public policy factors preclude the court from imposing a duty of care toward a foreseeable plaintiff." *Id.*

{12} A very close and intimate relationship with the injured party is required to pursue an action for loss of consortium. *See id.* ¶ 27; *Fernandez*, 1998–NMSC–039, ¶ 31, 126 N.M. 263, 968 P.2d 774. In order to determine whether a claimant has a sufficiently close and intimate relationship with the victim, this Court should consider several factors including, but not limited to: duration of the relationship; mutual dependence; common contributions to a life together; shared experience; living in the same household; financial support and dependence; emotional reliance on each other; qualities of their day to day relationship; and the manner in which they related to each other in attending to life's mundane requirements. *Lozoya*, 2003–NMSC–009, ¶ 27, 133 N.M. 579, 66 P.3d 948. *Lozoya's* "mutual dependence" factors includes, in our view, emotional, physical, and financial support and dependence. *Lozoya* makes clear that a relationship that creates a compensable interest is one that is intimate, protective, interdependent, and intertwined in functional (the way the people in the relationship meet day-to-day situations together), financially interdependent, and temporal ways (spending time together at least to the extent of living together in the same household). *See id.* ¶ 25. When added to the elements of the cause of action enunciated in *Fernandez*, these factors form a cogent picture of the legal requirements that are necessary to maintain a claim for loss of consortium. It is clear that the purpose of this cause of action is not to compensate claimants for grief they suffer as a result of their own upset, but to

compensate an injury to a relationship they shared with the injured or deceased person. Loss of consortium is thus derivative of other injuries and not an injury in and of itself. *See McLelland v. United Wisconsin Life Ins. Co.,* 1999–NMCA–055, ¶ 26, 127 N.M. 303, 980 P.2d 86. Accordingly, a duty to a prospective plaintiff springs only from the foreseeability of injury to that close and intimate bond. *Fernandez,* 1998–NMSC–039, ¶ 30; *Solon v. WEK Drilling Co.,* 113 N.M. 566, 569, 829 P.2d 645, 648 (1992).

{13} The elements consisting of the qualities of the relationship that give rise to the claim are flexible in scope. The legal availability of relief depends on the factual determination of whether a plaintiff has a significant enough relational bond with the victim of a tort to recover for loss of consortium. *Lozoya,* 2003–NMSC–009, ¶ 21, 133 N.M. 579, 66 P.3d 948. It is proper, with guidance from the district court for the fact finder to make this determination. *Id.*

{14} A dismissal as a matter of law reflects the formal insufficiency of the statement of the claim for relief; i.e., is a result of testing the law of the claim, not the facts that support it. *Vigil v. Arzola,* 101 N.M. 687, 688, 687 P.2d 1038, 1039 (1984). In granting the City of Gallup's motion to dismiss, the district court necessarily held that standing New Mexico law precluded any recovery for loss of consortium to Plaintiffs. Plaintiffs argue on appeal that they should be allowed to recover for loss of consortium if the evidence shows that their relationships with Decedent was sufficiently close financially, socially, or both, and if it was foreseeable that the injury to Decedent would harm the relationships. We agree.

{15} In *Solon,* the facts alleged on behalf of the decedent's parents included: (1) decedent and his daughter lived with his parents, (2) he had a close and loving relationship with his parents, and (3) he contributed to their financial well-being by working on the family home, putting on a new roof, pouring concrete for a patio and assisting with household maintenance and upkeep. *Solon,* 113 N.M. at 567, 829 P.2d at 646. Characteristics of the relationship between Plaintiffs and Decedent in this case were not alleged with

such particularity. Here, Plaintiffs alleged only that they "have all suffered emotional distress resulting from the loss of the society, guidance, and companionship" of Decedent.

{16} In responding to the City of Gallup's motion to dismiss that alleged no cause of action to exist, Plaintiffs only replied that they were "going forward with their loss of consortium claims in a good faith application for an extension or revision of existing law in the State of New Mexico regarding the loss of consortium." At the motion hearing, Plaintiffs did not elaborate on what they felt this meant, and they did not provide any more facts to indicate depth or breadth of the familial relationships from which we can draw any conclusions.

{17} The facts alleged by Plaintiffs are no less definite than the criteria set out in *Romero. Romero,* 117 N.M. at 425, 872 P.2d at 843. Plaintiffs do not have to set forth every relevant fact in the complaint. *See Tarin's, Inc. v. Tinley,* 2000–NMCA–048, ¶ 15, 129 N.M. 185, 3 P.3d 680. For instance, pleading loss of household services is a separate matter from pleading loss of consortium. UJI 13–1810 NMRA 2003. This said, however, dismissing a complaint is only proper as a matter of law when it appears that the plaintiff cannot recover or be entitled to relief under any state of facts provable under the claim, *Valdez v. State,* 2002–NMSC–028, ¶ 4, 132 N.M. 667, 54 P.3d 71, and all doubts are resolved in favor of the complaint. Here, the district court found a legal bar to entertaining the claims. We now see the question is one of factually establishing the nature of the relationship between claimant(s) and the injured party. *See Lozoya,* 2003–NMSC–009, ¶ 31, 133 N.M. 579, 66 P.3d 948; *see also Fernandez,* 1998–NMSC–039, ¶ 32, 126 N.M. 263, 968 P.2d 774. Here, the essential elements of a claim for loss of consortium can fairly be inferred from the allegations in the complaint to a sufficient extent to defeat a dismissal for failure to state a claim. We therefore reverse and remand this matter to allow Plaintiffs to develop such facts as they can to establish the sufficiency of their claims.

**Removal to Federal Court by Plaintiffs**

{18} The stipulated order granting the City of Gallup's motion to dismiss and

Plaintiffs' motion to amend directs Plaintiffs to remove the complaint to the United States District Court for the District of New Mexico once they have filed the amended complaint in state district court. Plaintiffs argue that because federal law precludes such removal, this Court should declare that portion of the order void.

{19} An issue may be appealed to this Court only upon the entry of a final order disposing of the case. *Pena v. Trujillo,* 117 N.M. 371, 371, 871 P.2d 1377, 1377 (Ct.App.1994). Plaintiffs' amended complaint, however, is still pending before the district court. In fact, Plaintiffs' refusal to remove or attempt to remove their amended complaint to federal court in compliance with the stipulated order entered below is the subject of a motion currently pending before the district court. This Court, therefore, may not review this issue at this time. *See City of Sunland Park v. Paseo Del Norte Ltd. P'ship,* 1999–NMCA–124, ¶ 8, 128 N.M. 163, 990 P.2d 1286 (" '[F]or purposes of appeal, an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible.' " (quoting *Sunwest Bank v. Nelson,* 1998–NMSC–012, ¶ 6, 125 N.M. 170, 958 P.2d 740)).

### CONCLUSION

{20} For the foregoing reasons we reverse the granting of the City of Gallup's motion to dismiss the claims for loss of consortium and remand this case for proceedings consistent with our decision herein. We also decline to address the issue concerning the removal of the action to federal court because no final order has been entered by the district court disposing of this issue.

{21} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and JONATHAN B. SUTIN, Judges.