IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2017-NMSC-021

Filing Date: June 19, 2017

Docket No. S-1-SC-35974

BRUCE THOMPSON, as Guardian ad Litem for
A.O., J.P., and G.G., Minor Children,

       Plaintiff-Respondent,

v.

CITY OF ALBUQUERQUE, RAY SCHULTZ, former
Chief of Police of the City of Albuquerque, and KEVIN
SANCHEZ, City of Albuquerque Police Officer,

       Defendants-Petitioners.

ORIGINAL PROCEEDING ON CERTIORARI
Denise Barela Shepherd, District Judge

City of Albuquerque
Jessica M. Hernandez, City Attorney
Stephanie M. Griffin
Albuquerque, NM

for Petitioners

Kennedy, Kennedy, & Ives, LLC
Shannon L. Kennedy
Joseph P. Kennedy
Adam C. Flores
Albuquerque, NM

for Respondent

## OPINION

**CHÁVEZ, Justice.**

**{1}** May the minor children of a parent whom they allege was wrongfully shot and killed

1

by a law enforcement officer (1) sue for loss of consortium damages under the New Mexico Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2015), and (2) bring their lawsuit even if the parent's estate did not sue for wrongful death damages? We answer "yes" to both questions for the following reasons. First, Section 41-4-12 of the TCA waives a law enforcement officer's sovereign immunity from liability for personal injury and bodily injury damages resulting from battery, and loss of consortium damages may be characterized as either personal or bodily injury damages. Second, loss of consortium damages result from the wrongful injury or death of someone who was in a sufficiently close relationship to the loss of consortium claimant, and such damages belong to the loss of consortium claimant and not to the injured person or the decedent's estate.

## BACKGROUND

**{2}** The background to our analysis is comprised of the well-pled facts in Plaintiffs' complaint, which we accept as truthful for purposes of reviewing the district court's ruling on Defendants' motion to dismiss. *Callahan v. N.M. Fed'n of Teachers-TVI*, 2006-NMSC-010, ¶ 4, 139 N.M. 201, 131 P.3d 51.

**{3}** On March 29, 2010, Albuquerque Police Department officers received information regarding a suspected stolen vehicle located in a commercial parking lot. Several officers then arrived at the scene and surrounded the suspected stolen vehicle with their unmarked police vehicles. Mickey Owings parked next to the suspected stolen vehicle. A passenger exited Owings's vehicle and approached the suspected stolen vehicle.

**{4}** The APD officers then positioned one of the unmarked police vehicles behind Owings's vehicle as Officer Sanchez approached Owings's vehicle on foot. Owings backed his vehicle into the unmarked police vehicle that was preventing him from leaving. Officer Sanchez drew his gun and pointed it at Owings as he continued to approach Owings's car. Owings drove away once Officer Sanchez began shooting at his car. Ultimately, Officer Sanchez shot and killed Owings during this encounter.

**{5}** Plaintiffs are Owings's surviving minor children who sued Defendants for loss of consortium damages under Section 41-4-12. Plaintiffs allege that Defendants' acts and omissions caused the wrongful death of their father, and as a result they will be "forced to grow up without the companionship, guidance, love, enjoyment, and support of their father . . . ." The district court granted Defendants' Rule 1-012(B)(6) NMRA motion to dismiss, concluding that the TCA did not waive law enforcement officers' sovereign immunity for a loss of consortium claim. The Court of Appeals reversed, *Thompson v. City of Albuquerque*, 2017-NMCA-002, ¶ 11, 386 P.3d 1015, and we affirm the Court of Appeals.

## DISCUSSION

**{6}** "Generally, the Tort Claims Act provides governmental entities and public employees acting in their official capacities with immunity from tort suits unless the [TCA]

2

sets out a specific waiver of that immunity." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 6, 121 N.M. 646, 916 P.2d 1313. Section 41-4-12 provides that law enforcement officers' immunity is waived for:

> liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

We review the dismissal of Plaintiffs' claim for loss of consortium damages under Rule 1-012(B)(6) de novo. *See Fitzjerrell v. City of Gallup ex rel. Gallup Police Dep't*, 2003-NMCA-125, ¶ 8, 134 N.M. 492, 79 P.3d 836 (noting that whether a motion to dismiss was properly granted is a question of law).

**Loss of consortium is a claim for damages deriving from a tort upon another, but which may be brought as an independent claim for damages to a sufficiently close relationship**

**{7}**     Defendants argue that there is no waiver of sovereign immunity for loss of consortium under Section 41-4-12 because loss of consortium is not specifically enumerated in the statute, and therefore a waiver would be contrary to "the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the [TCA] and in accordance with the principles established in that act." Section 41-4-2(A). The structure of Section 41-4-12 persuades us otherwise.

**{8}**     The plain language of Section 41-4-12 first presents the types of injury for which a law enforcement officer's immunity may be waived. *Id.* The types of injury enumerated include personal and bodily injury. *Id.* Loss of consortium fits squarely within personal injury as an element of such damages. *See* UJI 13-1810A NMRA (listing loss of consortium within the category of personal injury damages). Loss of consortium is a type of personal injury damage because "[d]amages for consortium are damages for the plaintiff's emotional distress" due to the harm to a sufficiently close relationship. *Fernandez v. Walgreen Hastings Co.*, 1998-NMSC-039, ¶ 26, 126 N.M. 263, 968 P.2d 774; *see also Weinstein*, 1996-NMSC-021, ¶ 26 (holding that emotional distress is a type of personal injury). Courts have recognized that "[d]amages for emotional distress . . . may be recoverable as damages for personal injury resulting from one of the enumerated acts." *Romero v. Otero*, 678 F. Supp. 1535, 1540 (D. N.M. 1987) (internal quotation marks omitted). Other courts have also found that loss of consortium is a damage resulting from bodily injury upon another. *Brenneman v. Bd. of Regents of the Univ. of N.M.*, 2004-NMCA-003, ¶ 19, 135 N.M. 68, 84 P.3d 685. Whether loss of consortium is labeled as personal or bodily injury, it is indisputably contemplated by the language of Section 41-4-12.

3

**{9}** Section 41-4-12 also delineates the torts for which a law enforcement officer's immunity may be waived. *Id.* The enumerated torts include battery, from which Plaintiffs allege their claim for loss of consortium damages arises in this case. In this regard, Plaintiffs' claim for loss of consortium damages derives from a tort enumerated under Section 41-4-12. *See Williams v. Bd. of Regents of the Univ. of N.M.*, No. CIV 13-0479 JB/WPL, 2014 WL 4351533, at *11 n.8 (D. N.M. Aug. 18, 2014) ("Loss of consortium can be asserted against New Mexico government actors, despite that it is not specifically mentioned in the [TCA], provided that the underlying tort—the one that caused direct physical injury—itself triggers an immunity waiver . . . ." (citation omitted)). Loss of consortium damages are derivative in nature because they arise from a physical injury upon another person. *See Romero v. Byers*, 1994-NMSC-031, ¶ 8, 117 N.M. 422, 872 P.2d 840 ("Loss of consortium is simply the emotional distress suffered by one spouse who loses the normal company of his or her mate when the mate is physically injured due to the tortious conduct of another."). Therefore, both the injury and the tort from which the children's claim for loss of consortium damages derive are specifically enumerated under Section 41-4-12.

**{10}** The Court of Appeals has correctly recognized that immunity may be waived for loss of consortium damages as a claim deriving from an enumerated tort under the TCA. In *Wachocki v. Bernalillo County Sheriff's Department* (*Wachocki I*), the Court of Appeals analyzed a wrongful death claim under Section 41-4-12 and a derivative claim for loss of consortium damages. 2010-NMCA-021, ¶¶ 1-2, 147 N.M. 720, 228 P.3d 504, *aff'd*, *Wachocki v. Bernalillo Cty. Sheriff's Dep't* (*Wachocki II*), 2011-NMSC-039, ¶¶ 1, 12-14, 150 N.M. 650, 265 P.3d 701. The Court of Appeals held that Section 41-4-12 waived immunity for the wrongful death claim, *Wachocki I*, 2010-NMCA-021, ¶ 1, but regarding the loss of consortium claim, the claimant, who was the decedent's sibling, could not recover because he had failed to prove the foreseeability of harm to a sufficiently close relationship with the decedent. *Id.* ¶¶ 54-57.

**{11}** Defendants argue that *Wachocki I* did not expressly hold that damages for loss of consortium may be recovered under Section 41-4-12. The fact that the *Wachocki I* Court analyzed the merits of the claim for loss of consortium damages *after* it determined there was a waiver for the tort claim from which the damages derived leads us to conclude otherwise. The Court of Appeals began its analysis on loss of consortium damages by stating that "damages for loss of consortium may be recovered under the Section 41-4-2(A) waiver of sovereign immunity." *Wachocki I*, 2010-NMCA-021, ¶ 50 (citing *Brenneman*, 2004-NMCA-003, ¶ 19). Section 41-4-2(A) is a general provision explaining the policy reasons behind the TCA. The same is true of Section 41-4-2(B), which states that "[l]iability . . . under the [TCA] shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." Due to its general applicability, Section 41-4-2 pertains to individual sections of the TCA, including Section 41-4-12. *See Torres ex rel. Estate of Torres v. State*, 1995-NMSC-025, ¶ 11, 119 N.M. 609, 894 P.2d 386 (observing that a waiver of immunity under Section 41-4-2(B) applied to an action for wrongful death by battery caused by law enforcement officers brought under

4

Section 41-4-12). Therefore, the *Wachocki I* Court's statement that damages for loss of consortium may be recovered under the general provision, Section 41-4-2, applies to Section 41-4-12. Similarly, when construing *Wachocki I* on appeal, this Court analyzed the merits of the claim for loss of consortium damages when we could have simply declared that there was no waiver of immunity under Section 41-4-12. *Wachocki II*, 2011-NMSC-039, ¶ 4.

**{12}** *Brenneman*, to which *Wachocki I* cited, also supports our conclusion that immunity is waived for loss of consortium damages under Section 41-4-12. *See Brenneman*, 2004-NMCA-003, ¶ 1. The *Brenneman* Court concluded that immunity was waived for a claim for loss of consortium damages in the context of Sections 41-4-9 and -10, 2004-NMCA-003, ¶ 6, but it also made several statements regarding waiver of immunity for loss of consortium damages as they pertain to the TCA as a whole. *See id.* ¶ 1 ("We hold that loss of consortium damages are permissible under the [TCA]'s provisions for damages resulting from bodily injury."); ¶¶ 10, 19 ("[W]e believe that loss of consortium is exactly the type of damage based upon the traditional tort concepts of duty that the Legislature intended to include under the applicable waivers of sovereign immunity in the [TCA]." (internal quotation marks omitted)).

**{13}** Defendants seek to distinguish *Wachocki I* and *Brenneman* on the basis that in those cases, the Court of Appeals analyzed claims for loss of consortium damages arising from negligence and not an intentional tort. We are not persuaded because other courts have also recognized that loss of consortium damages may result from intentional torts. *See McGrath v. Nassau Health Care Corp.*, 217 F. Supp. 2d 319, 335 (E.D. N.Y. 2002) ("Assault and battery claims may sustain derivative loss of consortium claims."). In *McGrath*, a public employee brought a lawsuit against her governmental employer and supervisor alleging assault and battery, among other claims, while the employee's husband asserted a loss of consortium claim deriving from the physical injury upon his wife. *Id.* at 322, 335. The court declined to dismiss the underlying intentional tort claims because the plaintiffs had pled sufficient facts to support them, and the loss of consortium claim was also not dismissed because it was adequately supported by the intentional tort claims. *Id.* at 333-34; *see also Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 376 (E.D. Pa. 2002) (recognizing that an assault and battery on a husband by a police officer, if proven, indubitably forms the basis for a loss of consortium claim by the wife). Furthermore, waiving immunity for loss of consortium damages resulting from negligent conduct necessarily implies that there also is waiver of damages resulting from intentional conduct. It would be illogical to forego waiving immunity for intentional conduct when waiver for negligence is permitted, particularly since Section 41-4-12 waives immunity for a wider range of tortious conduct committed by law enforcement officers than any other classification of public employee. *Compare* §§ 41-4-5, 41-4-6, 41-4-7, 41-4-9, & 41-4-10 (waiving immunity for negligence of public employees) *with* § 41-4-12 (waiving immunity for conduct premised on negligence, according to *Wachocki I*, in addition to assault, battery, and false imprisonment, among other torts). Accordingly, we hold that immunity is waived for claims of loss of consortium damages deriving from an enumerated tort under Section 41-4-12.

**{14}**   Defendants next contend that even if loss of consortium damages derive from the underlying battery, any lawsuit for such damages must be brought along with the underlying battery claim. We agree that a plaintiff who sues for loss of consortium damages must prove—as an element of loss of consortium damages—that the alleged tortfeasor caused the wrongful injury or death of someone who was in a sufficiently close relationship to the plaintiff, resulting in harm to the relationship. However, this does not mean that the loss of consortium claim must always be brought with the underlying tort claim, or that actual recovery for the underlying tort is a prerequisite for the recovery of loss of consortium damages. *See Archer v. Roadrunner Trucking, Inc.*, 1997-NMSC-003, ¶ 13, 122 N.M. 703, 930 P.2d 1155 (stating that while loss of consortium claimants may recover only if the physically injured person has a cause of action for his or her injuries, actual recovery for the underlying tort is not required in order to recover loss of consortium damages); *Turpie v. Sw. Cardiology Assocs., P.A.*, 1998-NMCA-042, ¶ 7, 124 N.M. 787, 955 P.2d 716 ("[T]he defendant must be at least potentially liable to the injured [person] before it can be liable to the [claimant] seeking loss of consortium damages.").

**{15}**   For our purposes in reviewing whether Plaintiffs are entitled to bring their claim as a matter of law, and not whether they may actually recover on their claim (which we were not asked to decide), Plaintiffs need only have pled sufficient facts to notify Defendants about the complaint's general premise. *See Petty v. Bank of N.M. Holding Co.*, 1990-NMSC-021, ¶ 7, 109 N.M. 524, 787 P.2d 443 ("Under our rules of notice pleading, it is sufficient that defendants be given only a fair idea of the nature of the claim asserted against them sufficient to apprise them of the general basis of the claim; specific evidentiary detail is not required at this stage of the pleadings.") (internal quotation marks and citation omitted)). Plaintiffs sufficiently pled the underlying battery claim from which their claim for loss of consortium damages arose by alleging that Defendants caused the deadly shooting of Owings, which resulted in the minor children losing their relationship with their father.

**{16}**   Defendants also argue that the minor children did not suffer a direct injury because it was only their father who suffered a deadly battery, not the children, and therefore their claim is merely a bystander claim for which there is no waiver under Section 41-4-12. *See Weinstein*, 1996-NMSC-021, ¶¶ 24-26 (concluding that the parents of a battery victim could not bring a separate cause of action for the tort of negligent infliction of emotional distress because "their claim [was] akin to a bystander claim" for which there is no waiver of immunity under Section 41-4-12). Although claims for loss of consortium damages derive from injury to another, the claimant has also suffered a direct injury for which he or she may seek recovery separately from the underlying tort. The *Weinstein* Court itself stated that there is a direct claim for personal injury for which there is an enumerated waiver under Section 41-4-12. *Weinstein*, 1996-NMSC-021, ¶ 26. The direct injury alleged by a loss of consortium claimant is one to a relational interest with another who was physically injured. *Lozoya v. Sanchez*, 2003-NMSC-009, ¶ 20, 133 N.M. 579, 66 P.3d 948, *abrogated on other grounds by Heath v. La Mariana Apartments*, 2008-NMSC-017, 143 N.M. 657, 180 P.3d 664; *Archer*, 1997-NMSC-003, ¶ 11. Plaintiffs' claim for loss of consortium damages alleges a direct injury to their relational interest with their father as a result of the battery

6

upon him. In this regard, Plaintiffs are not merely "indirect or incidental victims." *Cf. Lucero v. Salazar*, 1994-NMCA-066, ¶ 12, 117 N.M. 803, 877 P.2d 1106 ("We thus construe the language of Section 41-4-2(A) as evincing a legislative intent not to waive immunity for injuries to indirect or incidental victims of tortious acts committed by government employees.").

**{17}** A derivative claim for loss of consortium damages need not be brought along with the underlying tort claim because loss of consortium claimants suffer a direct injury separate from the physical injury to another. *State Farm Mut. Auto. Ins. Co. v. Luebbers*, 2005-NMCA-112, ¶ 37, 138 N.M. 289, 119 P.3d 169. In *Luebbers*, the Court of Appeals explicitly held that a minor child could pursue a claim for loss of consortium damages separate from an underlying wrongful death claim. *Id.* Defendants assert that *Luebbers* cannot be applied here because that case analyzed a claim for loss of consortium damages against a private party, not a government entity, under Section 41-4-12 or any other section of the TCA. However, once there is a waiver of immunity under the TCA, the state is treated the same way as any other defendant for purposes of that claim. *See* § 41-4-2(B) ("Liability for acts or omissions under the [TCA] shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty."); *Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 15, 310 P.3d 611 ("In enacting the TCA, the Legislature expressed an intent to waive the state's immunity in situations that would subject a private party to liability under our common law." (citing § 41-4-2(B))). Since we have concluded that there is waiver of immunity for Plaintiffs' claim of loss of consortium damages as deriving from the underlying battery upon Owings, the state may be treated like any private party, and therefore the *Luebbers* holding that claims for loss of consortium damages are independent is applicable here.

**{18}** Our recognition that claims for loss of consortium damages are independent is not unprecedented. As this area of law has expanded, this Court has increasingly allowed plaintiffs with differing relationships to the physically injured person to bring independent claims for loss of consortium damages that are separate from the underlying tort claim. *See Fernandez*, 1998-NMSC-039, ¶ 32 (affirming dismissal of the plaintiff's underlying tort claim, but holding that the plaintiff could nevertheless pursue her claim for loss of consortium damages); *Byers*, 1994-NMSC-031, ¶ 10 (concluding that "[j]ust as a spouse's pain and suffering is separate property," so too the spouse's recovery for the "emotional suffering due to the loss of consortium is separate property" (citations omitted)). We hold that Plaintiffs in this case may bring the claim for loss of consortium damages independent of the underlying battery claim.

**CONCLUSION**

**{19}** Because Section 41-4-12 of the TCA waives immunity for claims of loss of consortium damages arising from a battery, we hold that Plaintiffs' claim is permissible. We therefore affirm the Court of Appeals's opinion and remand to the district court for proceedings consistent with this opinion.

7

**{20}** **IT IS SO ORDERED.**

             _____

             **EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____

**JUDITH K. NAKAMURA, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**CHARLES W. DANIELS, Justice**

_____

**BARBARA J. VIGIL, Justice**